516 So.2d 450 (1987)
Ned COLLETT, Jr.
v.
Dale BRANCH, et al.
No. CA 86 1191.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Rehearing Denied January 7, 1988.
Writ Denied March 11, 1988.
Sam Collett Jr., Bogalusa, and Jacques Bezou, New Orleans, for plaintiff, appellant.
Edward Rodrigue, Jr., New Orleans, for defendants, appellees.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
GROVER L. COVINGTON, Chief Judge.
Plaintiff appeals the judgment of the trial court which granted a motion for a directed verdict in favor of the defendants and dismissed his suit. Because we find that the trial judge abused his much discretion in granting the motion, we vacate it and remand this case for a full trial.
This suit arose out of an incident occurring on April 19, 1981, when plaintiff and a number of other teenaged friends were boating and skiing on the Bush Canal near Sun in St. Tammany Parish. Two boats were in use by the group, one owned by Dale Branch and Huey Pierce and one registered[1] to Gardner Gallaspy. Members of the group would alternate riding in one of the boats, skiing, and picnicking on a sandy beach area. As a skier retired, the boat pulling him would veer close to shore near the sandy beach picnic area and the skier would "drop off" or release the ski rope. The boat would then turn towards the center *451 of the canal and "loop" around towards the beach again, coming to rest on the beach perpendicular to the shore. After the boat was beached, one of the group would begin pulling the ski rope in, so that for a period of time the ski rope would be stretched perpendicularly across the canal. Plaintiff was injured during such a period when the rope attached to the beached Gallaspy vessel was stretched out across the canal, and while he was in contact with the rope, the Branch-Pierce vessel struck it. The rope, which was coiled around plaintiff's arm, was jerked with sufficient force to pull him underwater and constrict the arm so that plaintiff suffered permanent partial disability of 40 percent of his right upper extremity.
Plaintiff filed suit against the owners and insurers of the Branch-Pierce vessel, the operator of that vessel at that time, Dean Thigpen, and his insurer, John Gallaspy as owner of the Gallaspy vessel, and his insurer, St. Paul Fire and Marine Insurance Company. Settlement was reached with all defendants but Gallaspy and St. Paul on the morning of trial, so that the trial was limited to the liability, if any, and quantum of damages attributable to Gallaspy and his insurer.
Plaintiff attempted to show that Gallaspy was liable under La.R.S. 34:850.1 et seq., the Uniform Pleasure Boating Act, for the act of the vessel operator, Gallaspy's son Gardner, in leaving the 75-foot long ski rope across a busy, 300-foot wide canal, and also for the use of a ski rope which did not properly float in the water so as to be visible to other boaters. His testimony essentially was that he was sitting on the sandy picnic area when the Gallaspy vessel beached, and that he observed a young woman in the vessel attempting to pull in the rope and entangling herself in it in the process. He then waded into the water next to the boat, which was approximately knee-deep, and was attempting to help her pull the rope in, when the Branch-Pierce vessel approached and struck the rope. The rope was not readily visible to the operator of the Branch-Pierce vessel because the handle on the end did not float properly, and pulled the rope down into the murky water.
La.R.S. 34:850.24 [presently § 851.18] provided at the time of the accident as follows:
The owner of a watercraft shall be liable for any injury or damage occasioned by the negligent operation of such watercraft, whether such negligence consists of a violation of the provisions of the statutes of this state, or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless such watercraft is being used with his or her express or implied consent. It shall be presumed that such watercraft is being operated with the knowledge and consent of the owner if, at the time of the injury or damage, it is under the control of his or her husband, wife, father, mother, brother, sister, son, daughter or other immediate member of the family.
La.R.S. 34:850.15(C) [now § 851.15(C)] provided:
C. All motorboats having in tow or otherwise assisting a person on water skis, surf-board or similar contrivance, shall be operated in a careful and prudent manner and at a reasonable distance from persons and property so as not to endanger the life or property of any person.
La.R.S. 34:851.9(A) [now § 851.5] provided:
A. No person shall operate any motorboat or vessel, or manipulate any water skis, surfboard, or similar device in a reckless or negligent manner so as to endanger the life or property of any persons.
Defendants, on the other hand, attempted to prove that plaintiff's injuries resulted from his own negligence, that he was indulging in horseplay with the rope and the young lady on the Gallaspy vessel, Lisa Ridgedale, when he was jerked underwater, and that he negligently positioned himself in chest-deep water so that he could not be seen from the Branch-Pierce vessel. They further attempted to show that it was acceptable boating practice on the Bush Canal to leave a ski rope extending across the canal in the fashion of the Gallaspy *452 vessel. They did this by calling out of turn one defense witness, Chavgney George Pierce, a son of one of the defendants who was on the beach at the time of the accident, before plaintiff concluded his presentation.
At the close of plaintiff's case, defendants moved for a directed verdict. The trial judge granted it and dismissed plaintiff's claims, preventing the jury from deciding the case. For several reasons, this action was erroneous.
Under LSA-C.C.P. Article 1810, a trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. In deciding whether or not to grant the motion, the court should consider all of the evidence in the light most favorable to the party opposing the motion. A court should not grant the motion unless the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable minds could not arrive at a contrary conclusion. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App., 1st Cir.1984).
The facts and inferences did not point so strongly to one conclusion in the present case. There was sufficient conflict between the testimony of plaintiff and defendant's witness regarding plaintiff's alleged horseplay with the rope to require an evaluation of credibility of the two. It was necessary that the trier of fact, in this case, the jury, be allowed to resolve the conflict and make a finding in this regard in order to reach the question of liability.
Moreover, although defendant introduced testimony that it was customary for boaters on the Bush Canal to leave a ski rope extended partially across the canal in the fashion described herein, the jury was entitled to weigh both this testimony and the reasonableness of the described custom to determine whether there was a breach of duty on the part of the Gallaspy vessel. Obviously, the risk that an extended line would be struck by another vessel and an injury would result was a real one; whether defendant had a duty to guard against such a risk occurring to this plaintiff in these circumstances was sufficiently arguable that reasonable minds could conceivably arrive at a contrary conclusion. Any findings in this regard were solely within the province of the trier of fact, the jury. In this instance, we find that it was an abuse of the trial judge's much discretion to grant the motion for a directed verdict.
An additional reason the trial court should have denied defendants' motion for a directed verdict is that the motion was not made at an appropriate time. A motion for a directed verdict may be made either at the close of the plaintiff's case or at the close of all of the evidence, but may not be made at points in between. In this case, the plaintiff allowed defendant to put on the testimony of one witness out of turn, prior to resting his case-in-chief. The trial court should not have entertained the motion at this point.
Because of this finding, we do not reach the more complicated issue of actual ownership of the Gallaspy vessel for the purposes of the Uniform Pleasure Boating Act and its financial responsibility provisions. The decision of the trial court granting the defendants' motion for a directed verdict is vacated and the case remanded for trial. Costs of this appeal are assessed to defendants-appellees.
MOTION VACATED and CASE REMANDED.
NOTES
[1] One of the issues at trial involved the question of actual ownership of the vessel registered to Gardner Gallaspy, who was a minor at the time of the accident. The testimony was undisputed that the boat was purchased by John Gallaspy, Gardner's father, who intended it as a gift to his 17-year-old son and had it registered in his son's name with the Department of Public SafetyOffice of Motor Vehicles and the Department of Wildlife and Fisheries.