639 So.2d 1214 (1994)
Mavis NEYREY
v.
TOURO INFIRMARY.
No. 94-CA-0078.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
*1215 Patricia D. Miskewicz, Ramirez & Miskewicz, New Orleans, for plaintiff/appellee.
Katherine B. Muslow, Thomas, Hayes, Beahm and Buckley, New Orleans, for defendant/appellant.
Before BARRY, BYRNES and PLOTKIN, JJ.
BARRY, Judge.
Touro Infirmary appeals a $30,000 judgment for Mavis Neyrey in this slip and fall case. The issues are: 1) the burden of proof applicable to Touro when Neyrey established that she slipped and fell on a foreign substance on Touro's premises; 2) reasonableness of Touro's inspection and clean-up procedures; 3) causation; and 4) vicarious liability. We affirm.

FACTS
On November 15, 1990 Neyrey slipped and fell because of a liquid in the middle of the third floor hallway at Touro. The substance was (clear) vomit from an eight year old boy who spit up 7-Up. Testimony conflicts concerning how long the spill was on the floor prior to Neyrey's fall.
Bobbie Morales and George Lyttle, mother and grandfather of the boy, were walking with him when he got sick. Morales was employed by Touro as a nurse but did not work on the date of the accident. Her son had tonsillitis and was at Touro for pre-operative tests.
Morales testified that the boy spit up a small amount in the middle of the hall and she pulled him to the side. She claimed that within seconds, before she brought the boy to the bathroom, she turned and saw Neyrey on the floor. Morales brought her son to the bathroom, then she reported the spill between 9:00 and 10:00 a.m.
Lyttle testified that the spill was on the floor for "a couple of minutes at the most" before Neyrey fell. He stated that he was present when Neyrey fell and he helped her get up. Lyttle said that Morales notified housekeeping, but the spill had already been reported and was cleaned within minutes.
Neyrey's daughter, Kim Bordonaro, was with her mother when she fell. Bordonaro did not see anyone in the hall before the fall, including Morales and her son. She testified that an older man helped Neyrey after the accident.
Neyrey did not see anyone in the hall. She testified that an older man helped her up.
Neyrey and Bordonaro testified that Neyrey was carrying boxed board games which scattered when she fell. Neither Morales nor Lyttle recalled any items on the floor.
Constance Smith, housekeeping manager, testified that housekeeping received two reports of the spill between 8:30-8:35 a.m. The reports were recorded in a log which she claimed was stolen by a former employee and were not available. She testified that the spill was cleaned within nine minutes. Rosalin Ross, housekeeping supervisor for the third floor, testified that she learned of Neyrey's fall after 9:00 a.m. When Ross checked the area she did not see the spill or Neyrey.
Smith testified that the housekeeping staff and porters perform regular inspections of the floors each day. Housekeeping is responsible for corridors within their respective departments (e.g., surgery, ICU) and porters are responsible for the general corridors between departments. She stated that the porters' policing procedure includes a 7:00 a.m. inspection followed by dusting and damp mopping the entire corridor; a fifteen minute break at 9:15 a.m.; buffing and general *1216 inspection until 11:00 a.m. lunch. Smith said all employees are instructed to report a spill.
The porter for the third floor was not called to testify. Smith testified that housekeeping logs are not kept but violations are recorded. Rosalin Ross, housekeeping supervisor assigned to the third floor, testified there was no report of a violation that day.
The trial court ruled in favor of Neyrey and clearly did not believe that Morales and Lyttle were present when Neyrey fell. The court stated:
Defendant ... suggested that the plaintiff slipped and fell while the child was vomiting. If this was the situation Bobbie Morales, seeing plaintiff lying on the floor would certaintly [sic] not have taken her child down and around the hall to clean him up. Her nursing instinct would have demanded that she direct her attention to the injured plaintiff.... If the clean-up calls were made at 8:30 A.M. and the vomit was cleaned up after 9:00 A.M., as some of the testimony has suggested, this would be in variance with the testimony by Connie Smith that the clean-up call from the recovery room resulted in a clean-up in nine minutes....
The court found that Touro breached its duty to exercise reasonable care because its employees had actual notice of the spill and it failed to take reasonable steps to remedy the situation.

BURDEN OF PROOF
Touro argues that the trial court incorrectly imposed a greater burden to exculpate itself from the presumption of negligence than the burden imposed on a merchant. Touro's argument appears to be that a merchant should be held to a higher standard of care than a hospital and since the legislature has lessened the merchant's burden through LSA-R.S. 9:2800.6, Touro's burden of proof should be lessened.
A plaintiff in a slip and fall case against a hospital must show the fall occurred and injury resulted from a foreign substance on the premises. Reynolds v. St. Francis Medical Center, 597 So.2d 1121, 1122 (La.App. 2d Cir.1992); LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312, 315 (La.App. 5th Cir.1990); Bordelon v. Southern Louisiana Health Care Corp., 467 So.2d 167, 169 (La.App. 3rd Cir.), writ den. 469 So.2d 989 (La.1985). The burden then shifts to the hospital to exculpate itself from the presumption of negligence. Reynolds v. St. Francis Medical Center, supra, citing LeBlanc v. Alton Ochsner Medical Foundation, supra. A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances. Reynolds v. St. Francis Medical Center, supra at 1123. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity. LeBlanc v. Alton Ochsner Medical Foundation, supra at 316.
LSA-R.S. 9:2800.6 sets the burden of proof in a claim for injuries caused by a condition in or on a merchant's premises. The statute was enacted to legislatively overrule McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987), which held that to exculpate itself from the presumption of negligence in a slip and fall case, a store owner must prove that none of its employees caused the spill. As originally enacted, subparagraph (C) provided that "the merchant need not introduce the testimony of every employee" to exculpate itself, and thereby lessened the store owner's burden of proof.
Under § 2800.6 as amended by Acts 1990, No. 1025, § 1, effective September 1, 1990, a plaintiff in a slip and fall case against a merchant must show that the condition which caused the fall presented an unreasonable risk of harm, that the merchant either created or had actual or constructive notice of the condition (i.e., the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care) which caused the damage, prior to the fall, and the merchant failed to exercise reasonable care. Since the 1990 amendment, floor debris no longer creates a presumption of negligence and the burden no longer shifts to the merchant to exculpate itself from that presumption. Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3rd Cir.1993). See Oalmann v. K-Mart *1217 Corp., 630 So.2d 911 (La.App. 4th Cir.1993), writ den., 94-0244 (La. 3/18/94); 634 So.2d 859. In Retif v. Doe, 632 So.2d 405 (La.App. 4 Cir. 1994), we further distinguished the difference between subsection A and subsection B. Both subsections apply to accidents which occur on a merchant's premises.
McCardie applied only to store owners or merchants. R.S. 9:2800.6 expressly applies to "merchants" as defined therein, and hospitals are not covered by that statute. Reynolds v. St. Francis Medical Center, supra. Touro appears to acknowledge that § 2800.6 is inapplicable but argues that policy reasons dictate a merchant's burden of proof should be higher than that of a hospital. The legislature has not addressed the burden of proof applicable in a slip and fall claim against a hospital. Consequently, jurisprudence addressing the burden placed on a hospital is not affected by § 2800.6.
Nonetheless, we need not consider whether a hospital's burden of proof should be lessened to the burden now placed on a merchant because, as detailed below, the record supports a finding that Touro failed to exercise reasonable care commensurate with the particular circumstances.

REASONABLENESS OF INSPECTIONS
Touro contends the trial court erred by concluding that Touro's inspection and clean-up procedures were insufficient to exculpate it from the presumption of negligence. We disagree.
In reasons for judgment the trial court outlined Touro's inspection and clean-up procedure as testified to by Constance Smith, housekeeping manager. The court noted the lack of objective evidence that the procedures were followed on the day of the accident. The court found that "(t)he hospital employees had actual notice that a hazardous substance was on the floor prior to plaintiff's fall, and failed to take reasonable steps to remedy the dangerous condition." [Emphasis added.]
An appellate court may not disturb a trial court's factual finding unless it is manifestly erroneous. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Stobart v. State, Department of Transportation & Development, 617 So.2d 880, 882 (La.1993). When findings are based on determinations of credibility of witnesses, the manifest error standard demands great deference to the factfinder, since only the factfinder can observe the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of the testimony. Jefferson v. Costanza, 628 So.2d 1158, 1161 (La.App. 2d Cir.1993), citing Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable in light of the entire record, the appellate court may not reverse. Stobart v. State, Department of Transportation & Development, supra at 882-83.
Morales testified that two doctors saw her son vomit and they walked around it. Smith testified that housekeeping received two reports between 8:30-8:35 a.m. Rosalin Ross, the third floor housekeeping supervisor, learned of Neyrey's fall shortly after 9:00 a.m.
This Court will not disturb a factual finding of the trial court which is based on a credibility determination. Where Touro had actual notice and failed to promptly clean the spill, it did not exercise reasonable care commensurate with the circumstances and did not sustain its burden of proof.

CAUSATION
Touro contends that if its inspection procedures were inadequate, it is not liable for Neyrey's damages because the spill was on the floor for only a few minutes.
Ms. Morales and Mr. Lyttle testified that Neyrey slipped within minutes or seconds of the spill. However, the trial court discredited their testimony. As detailed above, we find no error.

VICARIOUS LIABILITY
Touro suggests the trial court erred by finding it liable because of the negligence of Ms. Morales (apparently her failure to clean the spill) when she was not working that day.
*1218 The trial court did not find Morales negligent and did not base its judgment on vicarious liability.
The judgment is affirmed.
AFFIRMED.